UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| JOSHUA J. GODHART, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> DIRECT ALLIANCE CORPORATION, ) <br> ) <br> Defendant. ) <br> ) | 2:10-cv-02744 JWS <br><br> ORDER AND OPINION <br><br> [Re: Motion at Docket 11] |

## I. MOTION PRESENTED

At docket 11, defendant Direct Alliance Corporation ("Direct Alliance") moves for a stay of proceedings and an order compelling arbitration. Plaintiff Joshua J. Godhart ("plaintiff" or "Mr. Godhart") opposes the motion at docket 17. Defendant's reply is at docket 18. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

This lawsuit arises out of the termination of Mr. Godhart's employment. Mr. Godhart was a salesperson at Direct Alliance. Mr. Godhart maintains that his sales techniques were questioned by his superiors even though those techniques had been approved by the company's sales director. A private meeting was called during which Mr. Godhart alleges that the sales director told him he was getting "totally black on us,"

was "stealing," and had been "unethical."[1] Mr. Godhart maintains that other salespersons used the "same techniques with no administrative meeting."[2] After the meeting, Mr. Godhart claims he was subjected to a hostile work environment–"one of harassment, racial discrimination, micro-management, and false accusation."[3] Mr. Godhart's superiors ultimately deducted $20,000 of his "booked revenue," which was the basis for Mr. Godhart's commissions. After receiving no assistance from Direct Alliance's Human Capital Department, Mr. Godhart "filed a discrimination, harassment, and hostile workplace complaint" through the company's internal mechanism.[4] Mr. Godhart was sent home with pay. The following day, he was called into another meeting. Mr. Godhart maintains that he was confronted with an email that allegedly violated company policy. Mr. Godhart did not deny sending the email. His employment was then terminated, ostensibly because of the four-month-old email.

Mr. Godhart filed a complaint in federal court on December 21, 2010. He asserts three claims under Title VII–disparate treatment (42 U.S.C. § 2000e-2(a)(1)), wrongful expulsion from a labor organization (42 U.S.C. § 2000e-2(c)(1)), and retaliation (42 U.S.C. § 2000e-3(a)).

### III. STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") allows a party "aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration [to] petition any

---

[1] Doc. 1 ¶ 2.

[2] *Id.* ¶ 3.

[3] *Id.* ¶ 4.

[4] *Id.* ¶ 11.

United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."[5] The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."[6] "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."[7]

## IV. DISCUSSION

Direct Alliance has attached to its motion an arbitration agreement dated January 18, 2010 and signed by Mr. Godhart. The agreement covers "any disputes arising during [Godhart's] employment with Direct Alliance or after termination of [Mr. Godhart's] employment by Direct Alliance."[8] In a section titled "Scope of Arbitration," the agreement lists, for example, "disputes regarding [Godhart's] employment with Direct Alliance and termination thereof, employment discrimination, harassment and retaliation, [and] wrongful discharge."[9] Mr. Godhart has asserted claims under Title VII for employment discrimination, wrongful termination from a labor organization and retaliation, and failure to pay wages in accordance with the Fair Labor Standards Act. Those claims fall within the scope of the arbitration clause and the Ninth

---

[5] 9 U.S.C. § 4.

[6] *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

[7] *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (2000).

[8] Doc. 11-1 at 33.

[9] *Id.* at 34.

Circuit has held that Title VII claims are arbitrable.[10] Accordingly, the only issue is whether the arbitration agreement is valid.

Mr. Godhart makes two arguments regarding the enforceability of the arbitration provision. First, Mr. Godhart alleges that his signature was forged. Second, Mr. Godhart argues that the arbitration agreement was procedurally and substantively unconscionable.

## A. Governing Law

Because Mr. Godhart was employed in Arizona, Arizona contract law governs the enforceability of the arbitration agreement.[11]

## B. Mr. Godhart's Signature

Mr. Godhart maintains that his signature "on the final page of [the] arbitration agreement is a forgery."[12] This statement is not supported by an affidavit or declaration averring that the signature is forged. Thus, there is no direct evidence that the signature is forged. However, in his briefing Mr. Godhart goes on to assert that "hyper pixilation is present," rendering the signature "consistent with digital forgery," and he urges the court to examine it closely.[13] The irregularities that provide the basis for Mr. Godhart's contention are actually more conspicuous in the vicinity of the signature of Direct Alliance's representative than they are around Mr. Godhart's. The court is satisfied that all irregularities are consistent with the copying, scanning, and conversion

---

[10] *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (*en banc*) (9th Cir. 2003).

[11] *See Ticknor v. Choice Hotels, Int'l*, 265 F.3d 931 (9th Cir. 2001).

[12] Doc. 17 at 1.

[13] *Id.*

process described in defendant's reply brief.[14] Moreover, Mr. Godhart admits that he printed his name and dated the first page of the arbitration agreement.[15] Similar markings are visible there and the operative provision is on that page.

**C. Unconscionability**

    **1. Beyond Expectations/Procedural Unconscionability**

Mr. Godhart argues that the arbitration agreement is procedurally unconscionable because it is a contract of adhesion. Mr. Godhart cites *Circuit City Stores v. Adams*.[16] *Adams* involved application of California law, which is not applicable in the case at bar. In Arizona, adhesion contracts are enforceable unless their terms fall outside the reasonable expectations of the adhering party or are unconscionable.[17] Procedural unconscionability stems from "unfair surprise, fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should."[18] Here, the contract was labeled "Arbitration Agreement" in large, bold letters. The language of the relevant provision (1.1) is in standard print. That provision also appears on the one page that Mr. Godhart does not deny seeing and acknowledging. Thus, the requirement to arbitrate does not fall outside the employee's reasonable

---

    [14]Doc. 16 at 2.

    [15]Doc. 17 at 4.

    [16]279 F.3d 889 (9th Cir. 2002).

    [17]*Broemmer v. Abortion Servs. of Phoenix*, 840 P.2d 1013, 1016 (Ariz. 1992).

    [18]*Maxwell v. Fidelity Fin. Servs.*, 907 P.2d 51, 57–58 (Ariz. 1995) (quoting Dan B. Dobbs, 2 Law of Remedies 706 (2nd ed. 1993)).

expectations.  Put another way, the "take-it-or-leave-it" character of the agreement therefore does not render it procedurally unconscionable.

Mr. Godhart also argues that the agreement was unsupported by consideration, insofar as Direct Alliance's promise was illusory.  Both parties to the arbitration agreement, however, promised to arbitrate their claims and forbear exercising their right to sue.  Those promises were offered in exchange for each other.  The agreement was therefore supported by consideration.

Mr. Godhart argues that he should have been provided a copy of the American Arbitration Association ("AAA") rules.  Mr. Godhart cites *Trivedi v. Curexo Technology Corp.*, a California case.[19]  Even if that case were binding, it is distinugishable.  In *Trivedi*, the party seeking to compel arbitration relied on the text of the AAA rules.  Here, Direct Alliance relies only on the text of the arbitration agreement.  Failure to provide Mr. Godhart with a copy of the AAA rules did not render the agreement procedurally unconscionable.

Mr. Godhart argues that language in the footer reserving to Direct Alliance "the right in its sole discretion, to modify, amend, adjust, or revise its policies and guidelines at any time without advance notice"[20] renders its promises under the arbitration agreement illusory.  The language does not reference its obligations under the contract–only its "policies and guidelines."  Consequently, Direct Alliance's promises were not illusory.

---

[19]116 Cal. Rptr. 3d 804 (Cal. Ct. App. 2010).

[20]Doc. 11-1 at 33.

### 2. Substantive Unconscionability

"Substantive unconscionability concerns the actual terms of the contract and examines the relative fariness of the obligations assumed."[21] Mr. Godhart argues that certain language in the arbitration agreement is unconscionable. The court disagrees. Substantive unconscionability is characterized by "contract terms so one-sided as to oppress or unfairly surprise an innocent party, [and] an overall imbalance in the obligations and rights imposed by the bargain."[22] Here, both parties agreed to arbitrate. As discussed above, the relevant provision appears on the only page that Mr. Godhart admits to having seen. The terms are not one-sided, and the court discerns no potential for unfair surprise.

Mr. Godhart argues specifically that a provision in the arbitration agreement concerning injunctive relief is unilateral and therefore evidence of substantive unconscionability. As defendant correctly points out in its reply brief, the provision is bilateral. Even if it were not, the unilateral ability of a company to pursue injunctive relief with respect to claims involving non-competition agreements, trade secrets, "and other proprietary information"[23] would not be oppressive.

## V.  CONCLUSION

For the reasons above, defendant's motion to compel arbitration and stay the proceedings is **GRANTED.** The parties shall promptly commence arbitration. Reports

---

[21] *Maxwell*, 907 P.2d at 58.

[22] *Id.*

[23] Doc. 11-1 at 35.

on the status of the arbitration proceeding shall be filed on the first business day of each month, beginning with September of 2011, until the arbitration has been completed. This matter is **STAYED** pending completion of the arbitration.

DATED this 13th day of July 2011.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE